**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| VIRGIL WILSON, )<br>    ID #658914 )<br>        Petitioner, )<br>vs. )<br> )<br>RICK THALER, Director, )<br>Texas Department of Criminal )<br>Justice, Correctional Institutions Division, )<br>        Respondent. ) | No. 3:09-CV-2293-N (BH)<br>ECF<br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

**I. BACKGROUND**

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a denial of parole and a three-year set-off for the next parole review. The respondent is Rick Thaler, Director of TDCJ-CID.

On August 2, 1993, petitioner was convicted of aggravated sexual assault in Cause No. F93-02647-RW in the 363rd District Court in Dallas County and received a life sentence. (Petition (Pet.) at 2, State Habeas Transcript [WR-70,615-03] at 82). He appealed this conviction, and it was affirmed on direct appeal on June 14, 1994. *Wilson v. State*, 879 S.W.2d 309 (Tex. App.–Amarillo 1994, no pet.). On May 15, 2008, petitioner was denied parole, and his next parole review was scheduled for May 2011. (Response (Resp.), Ex. A). He filed a state writ challenging the denial of

parole on August 26, 2009.[1] It was denied without written order on the findings of the trial court without a hearing. (S.H.Tr.[WR-70,615-03]:cover).

The Court received petitioner's federal petition on December 2, 2009.[2] He raises the same issues regarding his parole denial as in his state writ, i.e., *ex post facto* law violations and denial of equal protection.

## II. STATUTE OF LIMITATIONS

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed this action after its effective date, the Act applies to his petition.

Title I of the Act substantially changed the way federal courts handle habeas corpus actions. One of the major changes is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The one-year period is calculated from the latest of either (A) the date on which the judgment of conviction became final; (B) the date on which an impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the Supreme Court initially recognizes a new constitutional right and makes the right retroactively applicable to cases on collateral review; or (D) the date on which the facts supporting the claim became known or could have become known through the exercise of due diligence. *See id.* § 2244(d)(1)(A)-(D). Here, petitioner has not alleged

---

[1] Petitioner filed a prior state writ in 2007 that was denied by the Court of Criminal Appeals on September 26, 2008, (S.H.Tr.[WR-70615-01]:cover, 2-12), but it did not challenge any denial of parole.

[2] Under the prison mailbox rule, a federal habeas petition is deemed filed when the prisoner delivers the petition to prison authorities for mailing to the court. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999). The record does not reflect when petitioner tendered his petition to the prison authorities for mailing.

any state-created impediment under subparagraph (B) or any new constitutional right under subparagraph (C). The one-year statute of limitations is therefore calculated from the latest of (A) the date his conviction became final or (D) the date on which he knew or should have known with the exercise of due diligence the facts supporting his claims.

Petitioner claims that his parole review occurred on April 26, 2008. (Pet. at 7). His parole was denied on May 15, 2008, and the board determined that petitioner would next be reviewed for release on parole on May 1, 2011. (Memorandum, Ex. A). The facts supporting petitioner's claims therefore became known or could have become known to him by May 15, 2008. Because petitioner filed his federal petition more than a year after this date, a literal application of § 2244(d)(1) renders his December 2, 2009 filing untimely.

**A. Statutory Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added); *see also Henderson* v. *Johnson*, 1 F.Supp.2d 650, 652 (N.D. Tex. 1998) (holding that the filing of a state habeas application stops the one-year period until ruling on state application). Petitioner's state writ was not filed until August 26, 2009, after the one-year statute of limitations had expired. (S.H.Tr.[WR-70,615-03]:2). He is therefore not entitled to statutory tolling.

**B. Equitable Tolling**

The AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir.

3

1998). The federal courts may equitably toll the limitations period of 28 U.S.C. § 2244(d)(1) in "rare and exceptional circumstances." *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000). The doctrine "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). It "preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). A petitioner must "diligently pursue his § 2254 relief", however, in order to obtain equitable tolling. *Coleman*, 184 F.3d at 403. He must meet "the high hurdle of showing (1) extraordinary circumstances (2) beyond his control (3) that made it impossible to file his petition on time." *Henderson v. Johnson*, 1 F. Supp. 2d 650, 654 (N.D. Tex. 1998). Petitioner has the burden to show that he is entitled to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam).

Courts must examine each case in order to determine whether there are sufficient exceptional circumstances present that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). When a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). In particular, courts should look to whether a petitioner pursued state habeas relief with diligence, including whether he timely inquired about the status of his state writ. *Hardy v. Quarterman*, 577 F.3d 596 (5th Cir. 2009).

Here, petitioner contends that he mailed a state writ to the state trial court on January 22, 2009, the trial court claimed that it did not receive it, and he resubmitted the writ on August 21,

4

2009. (Pet. at 4; Memorandum (Mem.) at 1). By letter dated April 6, 2009, petitioner requested information from the Court of Criminal Appeals about the status of an application he filed in the 363rd Judicial District Court of Dallas County, Texas "on or about January 22, 2009," because he had not received any information about it. (S.H.Tr.[WR-70,615-01, event date 4/10/2009]:1). After receiving this letter, the Court of Criminal Appeals sent petitioner a letter dated April 10, 2009, informing him that it had not received the writ of habeas corpus. *Id*. at 2.

On April 27, 2009, petitioner filed a "Petition for Issuance of Mandamus" with the Court of Criminal Appeals claiming that he had written to the Dallas County District Clerk on March 9, 2009 requesting a status report on his January application but received no response. Petitioner also requested that the Court of Criminal Appeals order the trial court to forward his state writ to the Court of Criminal Appeals for consideration. (S.H.Tr.[WR-70,615-02, event date 4/27/2009]:1-2). On May 20, 2009, the Court of Criminal Appeals issued an order directing the Dallas County District Clerk to file a response to petitioner's writ of mandamus. *Ex parte Wilson*, No. WR-70,615-02, 2009 WL 1396845 (Tex. Crim. App. May 20, 2009). By letter dated May 26, 2009, the Dallas County District Clerk informed the Court of Criminal Appeals that it had not received petitioner's state writ. (S.H.Tr.[WR-70,615-02, event date 5/29/2009]:1). Based on this letter, the Court of Criminal Appeals denied petitioner's writ of mandamus on June 10, 2009, without written order. (S.H.Tr.[WR-70,615-02, event date 5/29/2009]:cover). Petitioner then filed a state writ on August 26, 2009.

Petitioner's evidence supports his claim that he attempted to file a state writ concerning his parole denial in January of 2009. He has shown that between the date he tried to file a state writ (January 22, 2009) and the date the Court of Criminal Appeals denied his writ of mandamus (June

5

10, 2009), he was unaware that his state writ had not been received by the trial court. He has also presented evidence that he diligently pursued state habeas relief by inquiring about the status of his writ with the state district clerk's office in March and directly with the Court of Criminal Appeals in April. He filed a state application in a reasonable period of time after being informed that his first application had not been received, and he filed his federal writ promptly after his state writ was denied. While equitable tolling should be allowed only in rare and exceptional circumstances, petitioner has met his burden of showing that strict application of the statute of limitations would be inequitable based on circumstances beyond his control that prevented him from filing a state writ. *See Hardy*, 577 F.3d at 598-99 (finding that petitioner was entitled to equitable tolling where he inquired about the status of his state writ within eleven months of its filing and he filed his federal writ seven days after he received notice that his state writ had been denied and that the Court of Criminal Appeals had neglected to inform him of that fact); *compare Howland v. Quarterman*, 507 F.3d 840 (5th Cir. 2007) (holding that a petitioner is not entitled to equitable tolling where he first waited four months to inquire about a state writ he had mailed, waited another five months before again requesting the status of the writ, filed a second writ nine months later on the incorrect form, and did not file a state writ on the correct form until over a year later). The Court finds that petitioner is entitled to equitable tolling for 139 days.

Petitioner's federal writ was due one year after he was denied parole on May 15, 2008. Application of equitable tolling for 139 days extends this deadline until October 1, 2009. Petitioner filed a state writ on August 26, 2009, before his year lapsed, and his correctly-filed state writ statutorily tolled the federal statute of limitations until his state writ was denied on its merits by the Court of Criminal Appeals on November 18, 2009. Petitioner promptly filed a federal petition on

December 2, 2009. Based on the application of equitable tolling, his federal petition was timely filed.

### III. EX POST FACTO CLAUSE VIOLATIONS

In his first ground, petitioner claims that the State of Texas has changed its procedures for how often certain prisoners are considered for parole since his conviction, and that application of this change to him is an impermissible *ex post facto* law violation because the new procedures impose an automatic three-year set-off for review and require inmates to serve all or most of their sentence before being released. In his second ground, he claims that the current requirement that two-thirds of a seven-member parole review panel approve parole is an impermissible *ex post facto* law because approval by only two members of a three-member panel was required when he was convicted.

Article I, § 10, of the United States Constitution prohibits a State from passing any "ex post facto Law." To constitute a violation of the Ex Post Facto Clause, a change in law "must be both retroactive and to a prisoner's detriment." *See Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997); *see also Lynce v. Mathis*, 519 U.S. 433, 441(1997) ("To fall within the ex post facto prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime.")

> Finally, even if a law operates to the defendant's detriment, the ex post facto prohibition does not restrict "legislative control of remedies and modes of procedure which do not affect matters of substance." Hence, no ex post facto violation occurs if the change in the law is merely procedural and does "not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt."

*Miller v. Florida*, 482 U.S. 423, 433 (1987) (citations omitted).

The Fifth Circuit has previously found that statutory changes to the timing of parole reviews does not violate the prohibition on ex post facto legislation. *See Creel v. Kyle*, 42 F.3d 955, 956-57 (5th Cir. 1995). Moreover, the Supreme Court held in *California Dep't of Corrections v. Morales*, 514 U.S. 499, 502(1995), that a change in state law regarding the frequency of parole hearings created "only the most speculative and attenuated risk of increasing the measure of punishment" and therefore did not violate the Ex Post Facto clause of the Constitution. Therefore, even assuming that petitioner is correct that state law setting forth when parole hearings should be held has changed since he has been imprisoned, he has not shown a constitutional violation.

As for petitioner's contention that his constitutional rights have been violated because the result of parole review set-offs is that he is less likely to be released on parole, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Petitioner as a Texas inmate has no protected liberty interest in parole. *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Because he has no liberty interest in parole, he cannot mount a due process challenge against any state parole review procedure. *Id.* A change in parole review procedures that may cause him to serve more of his sentence is not a constitutional violation.

Finally, the Fifth Circuit has held that the Texas statute increasing the size of the parole voting panel in capital felonies from three members to the entire eighteen member body does not violate the Ex Post Facto Clause without evidence that an inmate would have received the required two votes under the previous panel size. *Wallace v. Quarterman*, 516 F.3d 351, 354-56 (5th Cir. 2008). Here, petitioner has presented no such evidence. In fact, the minutes from petitioner's parole review in 2008 reflect that parole was denied by three members of the panel without any need for

8

further votes from the other members of the seven-member panel. (Resp. Ex. A). Petitioner has not shown that he would have received any vote in favor of his parole.

When the state habeas court addressed these issues, it found that the current standards for when parole should be considered by the BOP are substantially similar to those in effect when petitioner was convicted. In event, there was no *ex post facto* violation because a change in parole review standards does not lengthen petitioner's sentence. That court then concluded that petitioner was not entitled to relief on these claims. (S.H.Tr.:75-77). Relief was denied on the basis of these findings. They are not contrary to federal law. Accordingly, petitioner is not entitled to relief on the basis of his first and second grounds for relief, and they should be denied.

## IV. EQUAL PROTECTION

In his third ground for relief, petitioner asserts that his equal protection rights have been violated because another inmate who was convicted of the same offense was released on parole by a three-member BOP panel rather than a seven-member panel as required under state law. He claims that he is being treated differently than a similarly situated inmate because he was considered for parole by a seven-member panel. (Mem. at 7-8).

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," essentially directing that all similarly situated persons should be treated alike. *See Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir.) (holding that "[t]he equal protection clause requires that all persons similarly situated be treated alike"), *cert. denied*, 534 U.S. 820 (2001). "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose

9

or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). Thus, "a party who wishes to make out an Equal Protection claim must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d at 306.

Petitioner has not shown that another inmate was released on parole after a three-member panel voted to approve parole. He has presented evidence that John Carol Hill was released on parole on May 26, 2009, and that documentation concerning Hill's parole review in 2006 mentions two panel members by name. (Pet. Ex. G, H). This does not establish that when Hill was released on parole three years after his 2006 review, he was considered and approved for parole by a three-member parole board panel.

Even assuming Hill was released on parole in 2009 based on the vote of a three-member panel, petitioner has not met his burden of proving a violation of his equal protection rights because he has not shown that this action was due to purposeful discrimination or any impermissible motive, as opposed to mistake. This ground was also denied on its merits by the state court, and this denial is not contrary to federal law. This claim should also be denied.

## V. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VI. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SO RECOMMENDED on this 9th day of April, 2010.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11